UNITED STATES BANKRUPTCY COURT  **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re:  Chapter 11

MARKETXT HOLDINGS CORP.,  Case No. 04-12078 (ALG)

                      Debtor.

------------------------------------------------------------------x

E*TRADE FINANCIAL CORP.,

       Plaintiffs and Counterclaim Defendants,

        - against -

MARKETXT HOLDINGS CORP. and  Adv. Proc. No. 05-01082 (ALG)
MKXT, LLC,

       Defendants and Counterclaim Plaintiffs

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,

        Intervenor-Defendant and Counterclaim
        Plaintiff.
------------------------------------------------------------------x
ALAN NISSELSON, as Chapter 11 Trustee of
MarketXT Holdings Corp., and the Official
Committee of Unsecured Creditors,

                    Plaintiffs,

       - against -  Adv. Proc. No. 05-03238 (ALG)

SOFTBANK AM CORPORATION f/k/a/,
SOFTBANK FINANCE CORPORATION
AND SOFTBANK INVESTMENT CORPORATION,
AS MANAGING PARTNER OF SOFTBANK
CONTENTS FUND
                   Defendants.
------------------------------------------------------------------x

           **MEMORANDUM OF OPINION ON MOTIONS TO INTERVENE**

1

A P P E A R A N C E S:

J.L. SAFFER, P.C.
Attorneys for Empyrean Investment Fund, L.P.
    By: Jennifer L. Saffer
20 Vesey Street, 7th Floor
New York, New York 10007

BRAUNER BARON ROSENZWEIG & KLEIN, LLP
Attorneys for Alan Nisselson, Chapter 11 Trustee, Plaintiff
    By: Howard L. Simon
61 Broadway, 18th Floor
New York, New York 10006

KAYE SCHOLER LLP
Attorneys for the Official Committee of Unsecured Creditors, Plaintiff, Intervenor-Defendant and Counterclaim Plaintiff
    By: Lester M. Kirshenbaum
        Margarita Y. Ginzburg
        Dina Rovner
425 Park Avenue
New York, New York 10022

SULLIVAN & CROMWELL LLP
Attorneys for Softbank AM Corporation f/k/a Softbank Finance Corporation
and Softbank Investment Corporation, Defendants
    By: James H. Carter
        Stephen Ehrenberg
125 Broad Street
New York, New York 10004-2498

MAYER, BROWN, ROWE & MAW LLP
Attorneys for E*Trade Financial Corp., Plaintiffs and Counterclaim Defendants
    By: Richard J. Morvillo
        Jeffrey F. Robertson
1909 K Street, N.W.
Washington, DC 20006
    By: Anthony J. Diana
        Michelle R. Holl
1675 Broadway
New York, New York 10019

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Empyrean Investment Fund, L.P. ("EIF") has moved to intervene in two adversary proceedings pending before this Court involving the Trustee and Creditors Committee of Market XT Holdings Corp. (collectively, the "Trustee"). One proceeding involves claims between the Trustee and E*Trade Financial Corp. ("E*Trade"), which are incorporated in counterclaims filed by the Trustee against E*Trade. In the second adversary proceeding, the Trustee has filed an adversary proceeding against Softbank AM Corporation and Softbank Investment Corp. as Managing Partner of Softbank Contents Fund (collectively, "Softbank"). This proceeding incorporates the Trustee's objections to claims filed by Softbank in the bankruptcy case and the Trustee's effort to obtain an affirmative recovery against Softbank. Both lawsuits in effect reconstitute actions that were pending in the District Court but were terminated subsequent to the entry of an order for relief in the Market XT Holdings Chapter 11 case.[1]

EIF's claim to intervention is based on a Claims Purchase Confirmation, Amendment and Settlement Agreement, dated September 7, 2003 (the "Agreement"), between EIF and Market XT Holdings and Market XT, Inc., a subsidiary of Market XT Holdings and also a debtor in this Court, who are collectively defined as "Sellers." The Agreement purports, among other things, to confirm a prior sale to EIF of rights that are termed "the Original Interest" and to amend that interest to provide for a sale of an "Adjusted Interest," which is defined in the Agreement as a certain "participating interest" in "Claims," as defined. Although no one has apparently come forward with

---

[1] E*Trade supports the motion to intervene, stating that if EIF has a colorable claim to a share of the proceeds of the litigation, it would prefer to have EIF in the suit rather than face the possibility of duplicative litigation. Softbank opposes the motion to intervene on the basis that there is still District Court litigation pending between it and EIF, as well as with EIF's principal and an affiliate, and there would still be duplicative litigation. An affiliated debtor, MKXT LLC, is also a party to the E*Trade adversary proceeding.

3

documentation of the original sale, for purposes of the instant motion the important point is the meaning of "Claims." This term is defined in the Agreement to mean claims of Sellers against Softbank, E*Trade "and possibly other persons which may be named or joined from time to time as defendants in any Lawsuit as hereinafter defined …." The term "Lawsuit" in turn is defined as any legal action brought against any of the above-named entities to enforce any of the Claims.

    Arguing that it has an absolute assignment of a percentage of the Claims against E*Trade and Softbank, EIF asserts a right to intervene pursuant to § 1109 of the Bankruptcy Code and Rule 24 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7024. EIF also relies on § 8.2 of the Agreement, which provides that Sellers will inform EIF of the status of any settlement negotiations, "promptly inform EIF of the commencement and status of any Lawsuit or any material development in any Lawsuit and provide to EIF a copy of each material pleading filed …" and that Sellers will permit EIF to participate in settlement discussions "and, if so permitted by the procedural rules applicable to any Lawsuit, to appear and be heard in the Lawsuit." §§ 8.2(h) and (j). Section 8.2 further provides, among other things, that if Sellers desire to abandon or settle Claims over EIF's objection, "then Sellers hereby tender to EIF the right to collect or otherwise realize upon the Claims, including the right to bring or continue to pursue any Lawsuit, on behalf of Sellers…." § 8.2(n). The Agreement is governed by New York law. § 11.9.

    The Trustee objects to the motion to intervene on several grounds, the most important of which is that EIF has no claim (in the bankruptcy sense) to a share of any Claim (as defined in the Agreement) because it failed to file a proof of claim in the

4

MarketXT Holdings Chapter 11 case. It is not disputed that EIF failed to file a proof of claim, either as a creditor or as a party to an executory contract that had been rejected, notwithstanding its receipt of a general bar order requiring the filing of all claims and a specific order requiring the filing of claims arising from the Trustee's rejection of the Agreement.[2] EIF responds that, under the Agreement, it has an absolute assignment of the Claims, as defined, and that as its rights are not derivative of those held by a debtor, it had no need to file a proof of claim. It also asserts that the Agreement is not executory and that its rejection by the Trustee was without legal consequence.

EIF's assertion that it has an absolute assignment of a Claim is contrary to the plain meaning of the Agreement. In the Agreement, the Sellers at most sell EIF a junior participation in their Claims; they do not assign to EIF a Claim to prosecute for its own account. Indeed, at the time the Agreement was executed, there was not even a lawsuit pending -- just a vague, undifferentiated possibility of a future Lawsuit. All of EIF's rights relate back to the definition of Original Interest in § 1.1(p), which is defined as "a participating interest in the Claims equal to a $20,000,000 participating interest in the Claims or, if greater, a 33.3% participating interest in the Claims," with the term Claims simply defined as claims against the Softbank and E*Trade parties. Section 1.1(p) further goes on to state that the term Original Interest "includes any and all amounts or other property *to be received* upon the collection, settlement or other disposition of any of

---

[2] By order dated June 23, 2005, the Court required the filing of all claims, as broadly defined in Bankruptcy Code § 101(5), whether secured or unsecured, contingent or fixed, liquidated or unliquidated, by July 29, 2005. By motion dated July 28, 2005, the Trustee also sought an order authorizing the immediate rejection of certain prepetition contracts between the Sellers and EIF and certain of EIF's affiliates, including the specific Agreement at issue here. On August 29, 2005, the Court entered an order granting the Trustee's motion and rejecting any contract between EIF and the Sellers, to the extent that the contract was executory, in accordance with § 365 of the Bankruptcy Code. The order provided that any damage claim of a party to the rejected agreements had to be filed with the Court within 15 days after entry of the order. EIF, which argued against entry of this order, did not file a proof of claim.

5

the Claims to the extent attributable to the Original Interest." (emphasis added).[3]  The fact that Sellers could not have made an outright assignment of a Claim is confirmed by the fact that it is not possible to determine EIF's entitlement until there is a recovery on a Claim and the calculations provided for in the definitions of Original Interest and Adjusted Interest can be made.

The fact that EIF has an interest that is entirely derivative of the Sellers' interests is confirmed by the other provisions of the Agreement, cited in part above.  Section 8.2 makes it clear that the Sellers, not EIF, have the right to commence and prosecute any Lawsuit relating to the Claims.  The Sellers are required to afford certain rights to EIF, but it is only under certain circumstances, such as a settlement over EIF's objection, that EIF has the right to take over a Lawsuit, and then only if EIF accepts "such tender by providing to Seller an instrument signed by EIF to such effect."  § 8.2(g).  EIF was never tendered a Lawsuit, never accepted such tender, and this provision never became effective to give EIF an outright assignment of a Claim, and in any event, EIF's rights to take over a lawsuit terminated when the Agreement was rejected by the Trustee, a matter which is discussed further below.  EIF argues that the Agreement does not speak of an assignment of the "proceeds" of litigation and that this is a critical difference.  Although the Agreement does not use the word "proceeds," the provisions cited above confirm that EIF has, at best, a participation in proceeds to be "received" by the Sellers in their litigation against third parties.

---

[3] While EIF in § 5.2(c) agrees to "be entitled only to the Adjusted Interest" and to waive its right to the "portion of the Original Interest that exceeds the Adjusted Interest," the definition of Adjusted Interest is merely a revision to the definition of Original Interest.  Section 1.1(a) defines Adjusted Interest as "a participating interest in the Claims equal to a $20,000,000 participating interest in the Claims or, if greater, a 20% participating interest in the Claims, minus the sum of (a) the Borrowed Funds and (b) any unpaid Prepayment Premiums."  The definition of Adjusted Interest also states that it "includes any and all amounts or other property received upon the collection, settlement or other disposition of any of the Claims to the extent attributable to the Adjusted Interest …."

6

Nevertheless, even if EIF were correct that it received an outright assignment of a Claim, it would still have rights that are derivative of those of the Sellers. The Trustee cites *Klar v. Backrach (In re Modell)*, 71 F.2d 148 (2d Cir. 1934), where the Circuit Court considered an assignment of "all right, title and interest in and to any verdict, decision, judgment or proceeds thereof." The Court held that this assignment, which was of all right, title and interest in and to a judgment as well as the "proceeds," created only an "executory agreement to transfer such property when it shall come into existence," and that the proceeds of the judgment were property of the estate and not of the alleged assignee. 71 F.2d at 149. It may be that this part of the holding of *Modell*, that an assignment of a lawsuit or an interest in a lawsuit is executory, has been tempered by time. In *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 838 n.6 (2d Cir. 1974), the Circuit Court observed that the New York courts had subsequently undermined the force of *Modell* and had made it clear that a lawsuit could be the subject of a completed, non-executory assignment. See *Stathos v. Murphy*, 26 A.D.2d 500, 506, 276 N.Y.S.2d 727 (1st Dept. 1966), *aff'd* 19 N.Y.2d 883, 227 N.E.2d 880, 281 N.Y.S.2d 81 (1967).[4] Yet as *Law Research* discusses at length, for bankruptcy purposes, the assignee of a lawsuit has merely a "present, instead of a future lien, on the lawsuit." 498 F.2d at 838, n. 6; compare *Dunlap-McCuller v. Riese Org.*, 1995 WL 422141, at *1 (S.D.N.Y. July 18, 1995) (an assignment of "all rights to the proceeds of

---

[4] In affirming the Appellate Division, the New York Court of Appeals described the holding of *Stathos* in the following terms: "The Appellate Division concluded that, since the assignment involved the transfer for value of a fully matured claim, rather than a transfer of an interest in a future judgment or fund, it took immediate effect…." 19 N.Y.2d at 884, 227 N.E.2d at 881, 281 N.Y.S.2d 81. It bears repeating that there was no "fully matured claim" to assign when the Agreement here was executed. See also *A.E. Ottaviano, Inc. v. New York*, 41 Misc.2d 578, 579, 246 N.Y.S.2d 12, 14 (N.Y. Ct. Cl. 1964) (rejecting the concept of a partial assignment of a lawsuit and finding that an assignee was not a proper or necessary party for determination of a claim where that assignee held an executory interest in any sums that might be recovered by the assignor).

7

the lawsuit" operates only as a future lien, which comes into existence only when the judgment is entered); cf. *Don King Prods., Inc. v. Thomas*, 945 F.2d 529, 534 (2d Cir. 1991) (holding that under New York law, income to be earned in the future may be assigned, but the assignment of a right to receive income contingent upon the occurrence of a future event does not convey a present interest to the assignee).

Whether the assignment in the Agreement created a "present lien," within the meaning of *Law Research*, or a "future lien" on amounts to be received, as discussed above, any lien held by EIF would be on property of the MarketXT Holdings estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992); *Vullo v. Sheets (In re Sheets)*, 69 B.R. 542, 544 (W.D.N.Y. 1987). EIF's failure to file a proof of claim in MarketXT's Chapter 11 case is thus fatal to its demand to share in the proceeds of the litigation. The "bar date order" entered in the Chapter 11 case required all creditors with secured or unsecured, contingent or fixed, liquidated or unliquidated claims to file a proof of claim by a date certain. This order was binding on EIF as an alleged lienholder, whose claims do not "ride through" a Chapter 11 case in the face of a valid bar order. See *Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 605 (2d Cir. 1991) (a Chapter 11 secured creditor whose claim is not scheduled or whose claim is characterized as disputed, contingent or unliquidated must file a proof of claim to preserve its rights); see also 11 U.S.C. § 1111(a); Fed. R. Bankr. P. 3003(c)(2). EIF's failure to file a claim is fatal to its pretensions to have a continuing participation in the existing Claims. See *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *In re Best Products Co.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992).[5]

---

[5] EIF's contention that the Agreement provides that the assignment is denominated as a "true sale" and not as an assignment intended for security is beside the point. The assignment may have been a "true sale," but

8

In § 8.1(a) of the Agreement, the parties apparently recognized that EIF might be left as a possible creditor of a Seller upon the Seller's receipt of any litigation proceeds, and they there purported to create a trust for the benefit of EIF to protect it against what happened here -- a Seller's bankruptcy. Section 8.1(a) of the Agreement provides that "[u]pon either Seller's receipt of any amounts or other property from the collection, settlement or other disposition of any of the Claims, Sellers shall immediately notify EIF of the details thereof," and shall segregate the portion of the proceeds attributable to the Adjusted Interest, which "shall be held by such Seller in trust for EIF." It is highly doubtful that this provision, alone, would be effective to create a constructive trust in EIF's favor that would overcome the rights of a bankruptcy representative. *New York v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217-19 (2d Cir. 2004); *LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 2004 U.S. Dist. LEXIS 17575 (S.D.N.Y. Sept. 1, 2004), *aff'd* 144 Fed. Appx. 900 (2d Cir. 2005); *PlasmaNet, Inc. v. Phase2Media Inc. (In re Phase2Media)*, 2002 Bankr. LEXIS 1457, at *22-23 (Bankr. S.D.N.Y. Dec. 20, 2002). Even if it would have effect, on the theory that the partial assignment of a true chose in action can give rise to a constructive trust, see 1 Scott and Fratcher, *The Law of Trusts* § 16 (4th ed. 1987), the trust would still have to be imposed on property of the bankruptcy estate, which is foreclosed to EIF by its failure to file a proof of claim.

The parties dispute whether the Agreement was an executory contract. While the Second Circuit viewed the assignment of rights to a litigation as executory in *In re Modell*, the characterization of the Agreement as executory or non-executory is not

---

as discussed at length in *Law Research*, it afforded EIF at best a lien on certain claims -- liens that it had to protect by filing a proof of claim.

9

critical here. If the Agreement or any part of it was executory, it was rejected, and the counterparty, EIF, was required to file a proof of claim by a date certain, which it did not.[6] If the assignment provided for in the Agreement was non-executory, EIF failed to file a proof of claim by the MarketXT Holdings general bar date. In either case, EIF was required to file a proof of claim in the Market XT Holdings Chapter 11 case in order to preserve its rights.[7]

The Trustee also argues that the Agreement is spurious, is itself a fraudulent conveyance, or is a stage in a fraudulent conveyance that began months earlier with a Pledge Agreement between EIF and MarketXT Holdings. His assertions in this regard do not, at this stage of the case, provide an independent reason to deny intervention. The Trustee has filed an adversary proceeding against EIF and other defendants with respect to the Pledge Agreement but has not specifically incorporated allegations with respect to the Agreement at issue herein. Should it become necessary to determine whether the Agreement is a fraudulent conveyance, or is fraudulent, the Trustee has his remedies. As EIF argues, it is improper to presume that the Agreement is a fraudulent conveyance, and the Trustee's unproven assertions in that regard do not entitle the Trustee to relief on these motions.

EIF has not claimed that it did not receive notice of the bar date in the MarketXT Holdings case or notice of rejection of the Agreement, requiring the filing of proofs of claim by a date certain. There seems no dispute, based on an extensive record, that EIF

---

[6] Certainly there are executory aspects of the Agreement, such as the Sellers' continuing obligation to turn over control of the Lawsuits to EIF under certain conditions. These obligations were rejected.

[7] EIF argues that the rejection of an executory contract itself does not void the contract or destroy property rights, citing *In re Paolo by Gucci*, 126 F.3d 380, 389 (2d Cir. 1997); *In re Drexel Burnham Lambert Group*, 138 B.R. 687, 711 (Bankr. S.D.N.Y. 1992). See EIF's Reply at 13. It is not the rejection of the contract or any executory aspect of the contract that affected EIF's rights. EIF lost any rights it might have had when it failed to file a proof of claim.

10

made a conscious, tactical decision not to file a proof of claim in order to preserve its rights to a trial by jury in the adversary proceeding that the Trustee has commenced. That was its choice. See *First Fid. Bank, N.A., v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 838-40 (2d Cir. 1991). But the consequence is that EIF has no claim to a participation in the Claims based on the Agreement. It consequently has no interest in the Litigation that would entitle it to intervene as of right under Rule 24(a)(2), which provides for intervention "when the applicant claims an interest relating to the property or transaction which is the subject of the action…."

EIF further argues that § 1109 of the Bankruptcy Code is a United States statute that gives it an unconditional right to intervene, within the meaning of Rule 24(a)(1). In *Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 172 (2d Cir. 2002), the Second Circuit gave a broad reading to the mandate of § 1109 that "[a] party in interest, including the debtor, the trustee, a creditors' committee, and equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." Nevertheless, as a consequence of its failure to file a proof of claim, EIF not only has no legal interest in the Claim as defined in the Agreement, it is not a creditor of MarketXT Holdings. EIF's interest is that of a defendant in its own fraudulent conveyance case. An entity's status as a defendant in an adversary proceeding does not make it a "party in interest" entitled to intervene in other adversary proceedings under § 1109. See *In re E.S. Bankest, L.C.*, 321 B.R. 590, 598-99 (Bankr. S.D. Fla. 2005); *In re FBN Food Servs., Inc.*, 1995 WL 230958, at *4 (N.D. Ill. Apr. 17, 1995).

11

EIF has adverted to discretionary intervention under Fed. R. Civ. P. 24(b) in its motion, but that argument also is premised on the proposition that it owns, in its own right, part of the Claim as defined in the Agreement. Its position is based on an erroneous premise, and its motion to intervene under Rule 24(a) and 24(b) is denied.

The Trustee is directed to settle an appropriate order on ten days' notice.

Dated: New York, New York
January 10, 2006

>    */s/ Allan L. Gropper*
> UNITED STATES BANKRUPTCY JUDGE